Good morning again. Our next case is Michelle Sterrett v. Department of the Navy, 2011-32-10. Mr. Toks. Thank you, Your Honor. May it please the Court. Ms. Michelle Sterrett asked this Court to reverse her removal from federal service. In our opening and reply briefs, we've set forth legal arguments upon which we allege that the four charges upon which Ms. Sterrett was removed are not merited and are not substantiated in the law. Therefore, I would like to focus, at least initially in my oral argument, on the second major ground upon which Ms. Sterrett contends she was not removed properly or legally, and that is that the removal penalty itself was excessive. We have four positions upon which we base the statement that her removal penalty was excessive. Number one is the comparison between what Ms. Sterrett received as action initially when she was judged based upon the IG report. Don't you have a situation here, though, in which the deciding official has made clear that the first and fourth charges, standing alone, that either one of them would have been sufficient for the removal? So it really doesn't make any difference whether the second and third charges are sustained. I would not disagree with that. I would just say, number one, the first and fourth charges are legally insufficient, and number two, what I was going to get to in this second argument of mine, is that the arguments of the deciding official are abjectly unsupported by fact. The deciding official's arguments, or basically his contentions regarding the 12 Douglas factors, are set forth in the record at pages 379 to 383. I would respectfully submit that they are just arguments, and with respect to a number of those arguments, they consider factors that were neither charges nor allegations in the proposal notice, and this court has said in O'Keeffe, you cannot punish someone based upon conduct that was not included in the proposal notice. Let me address that more specifically, Judge Dice, since you asked the question. In the Douglas factors, pages 379 to 383, under factor number one, the deciding official uses that as a basis for the removal, cites the alleged false statement based upon claims that Ms. Derrick received supported written statements. The administrative judge of the Merit Systems Protection Board said that claim wasn't sustained. Secondly, under factor number one, the deciding official said that Ms. Derrick misstated the claim when she said she never considered a GS-9 salary or position for Danny Garcia. That is not listed anywhere in the notice of proposal. Not at all. So that is a due process violation under O'Keeffe, to consider that as a basis for removal. One due process violation. With respect to factor number four, the deciding official erroneously alleges that Ms. Derrick used government resources for personal gain. Again, nowhere is that alleged as a specification or charge in the proposal notice. Due process violation number two. The fourth Douglas factor consideration also states, and this is the most egregious erroneous statement, that Ms. Derrick offered a government position in exchange for a written statement favorable to her. Not alleged at all in the notice of proposal. At all. Third due process violation. What these, where the deciding official gets these allegations are from the IG report. The agency decided in proposing her removal not to base the proposed removal on those allegations. The deciding official was not deterred. He used them anyway in deciding upon removal as the penalty. But there were other errors. The fifth factor. I cannot trust this employee primarily because she lied under oath. Again, the agency in responding to discovery, as we noted, said we don't contend that Ms. Derrick intentionally made false statements. They said that. And in response to the same interrogatory, they didn't provide any facts that we requested that indicated that any misstatement was intentional. So they're on record as saying no intentional misstatements. Also, factor number six regarding the consistency of the penalty. No answers provided concerning consistency of the penalty meted out to Ms. Derrick as judged or compared to other penalties. Factor number seven, consistency of the penalty. With the agency's penalty guidelines, no specific response there. Just the recurring kind of mantra of the deciding official, she's bad, she needs to be removed. Factor number eight, notoriety of the offense or impact upon the reputation of the agency. Nothing there either. Just again, she's bad, she needs to be removed. With respect to factor number nine, this is another important factor, the clarity with which Ms. Derrick was on notice of any rules violations. Again, we're talking about conduct that was not patently improper. We're not talking about lies. We're not talking about vulgarity or anything of that nature. We're talking about comments basically to people during an interview. And it is clear that Ms. Derrick never received any complaints over a period of 12 years of doing this. No complaints whatsoever, number one. Number two, when there was a complaint, not in an interview process, but during a hospital visit, there was a complaint by the individual in the hospital after Ms. Derrick's visit to a military member of the command. Nothing happened. The military member didn't do anything, didn't communicate with Ms. Derrick, didn't do anything. So throughout these 12 years, as she is going about asking questions concerning issues, no complaints whatsoever to her. So there's no real issues. With respect to pregnant military members, they're interviewed. Interviewed initially when they come on the command to find out whether there's anything the Navy can do to assist them, find out whether they need to work limited duty, are they capable of working outside limited duty, most of them have to work limited duty. In connection with interviewing them, there are questions that are asked. There are written questions, and this is another point. There are written questions that ask the individual, among other things, how many pregnancies have you had, other than this one. And how did those pregnancies end, other than live birth. Miscarriage, abortion, and other personal questions. So placing Ms. Derrick's question of you don't have to depend upon a man, the Navy will take care of you. Or, you know, you really, I'm sorry you got yourself into this situation being pregnant without being married to the father. Those kinds of questions in the context of the written questions that were asked, certainly Ms. Derrick's questions can't be perceived as so invasive as the agency alleges. If they allege it's improper, okay fine it's improper, tell her don't do that anymore, and there's nothing in the record to indicate she would not have stopped. Nothing at all in the record to indicate she would not have stopped. We have in Norris and other cases said that in the board proceeding new evidence can be brought in with regard to the charge. So help me understand what the due process problem is here. That is a different, I may suggest a different problem. With respect, the argument we made was that there was a due process violation with introducing the new evidence. And I was dismayed when Norris came down a few months ago that just shot me in the foot. Okay, I would argue that on that particular argument, on that particular argument I would still say, and I don't know whether exceptions were raised in Norris and considered, I know from the decision, the essential case that I've been citing, Laverne Mill versus Cleveland Board of Education wasn't even addressed in Norris. And my argument would still be that when you have a situation where an agency cannot use certain information prior to removal, they could not use the statements and affidavits that they used after, they couldn't. The IG told them, I'll release the report to you, but you cannot have, or you cannot release to the employee the underlying documents. So you're not contending that your client faced a different charge at the MSPB here? No. Just that it was different evidence? Yes, that's one argument, just on the different evidence. I'm arguing still that she shouldn't have had to face different evidence, no employee should have to face different evidence for two reasons. One, a principle justification for Laverne Mill saying that a federal sector permanent employee of the federal government is entitled to due process in knowing the charges and the evidence is to give the employee the opportunity to respond to that information before termination, not after, but before termination. That's still an important factor. The second important argument, Your Honor, is that Laverne Mill makes clear, and I've said before already, but this information should be provided to the employee before and not after. Also, if an agency can produce additional evidence after, there is no way to judge the quantum of evidence that is produced in order to terminate the employee. An employee can be terminated based on, if you will, a scintilla of evidence. And that can never be judged, because once the MSPB appeal is filed, the employer can then amass all of this other evidence and prevail on the MSPB appeal, possibly. Whereas the employee has not been given any opportunity to consider this evidence. And it can be intentional to do this. This is not mistaken, it's intentional. Thank you. Mr. Tooks, you want to save two minutes for rebuttal? Yes, I do. If you'd like, we'll hold it for you. Ms. Wager? Wager, yes, Your Honor. May it please the Court. The Court should affirm the Board's decision removing Ms. Derrick. You would agree, wouldn't you, that Charge 2 wouldn't support the removal? There's not clear evidence in the record that it would not support the removal. However, the deciding official did state that Ms. Derrick's hostile and racist comments were so severe that they were— We're not talking about the hostile work environment. We're talking about the insulting remarks. Your Honor, well, there's clear evidence in the record that the deciding official thought one or four would— I understand. I understand. But the deciding official also commented on page 382 of the joint appendix that her comments toward the sailors were so deeply embarrassing to the command that the agency could not risk their reoccurrence. So it is possible that even Charge 2 might have— But you're not arguing that Charge 2 alone is enough, right? No. It's not clear from the record that it would have been. It would probably need to be remanded for reconsideration of what penalty would be appropriate. Okay. But how about Charge 3? I mean, I think you're reading powers awfully broadly by suggesting that where there's a hostile work environment charge not based on sexual misconduct, that you don't have to call it in Title VII framework. Starrer doesn't say that, right? Your Honor, no, it does not. And I believe you're referring to Pope. Pope, yes. So Pope creates a double presumption. And it does not say necessarily whether when the charge is a hostile work environment, Title VII must be complied with. But in this instance, it's clear that the agency was not referring to Title VII, but that the agency was merely attempting to describe a type of conduct that affected the efficiency of service. And the agency proved each of the elements of the conduct described under that charge, and the administrative judge found that Ms. Starrer did engage in that conduct, and that that did harm the efficiency of service. Where there is evidence in the record that shows that these pregnant sailors, whether they were working for Ms. Starrer, such as on page 628 of the Joint Appendix, one of the pregnant sailors working for Ms. Starrer said she had such a negative experience with her, she just wanted nothing to do with her and was trying to stay away from her. When it's clear that there are these comments that are just so pervasive and repetitive... Well, there's evidence that might be sufficient to satisfy the Title VII stance, but the problem is that framework wasn't applied by the MSPB. They didn't make a determination that an objective person would have found this and so on and so forth, right? Not expressly, but it's implicit, I believe, in the administrative judge's decision that there were numerous individuals who found her comments and her behavior hostile and abusive, and based upon that, and then considering Ms. Starrer's explanation that it was part of her job, the administrative judge weighed that and found that, in fact, those types of questions and comments were not necessary for her job. And in fact, one of the prevailing regulations that Ms. Starrer was on notice, on page 41 of the record and on page 258 of the record, one of the instructions from the agency was that pregnant servicewomen shall not be subjected to harassment or imposition of personal opinion, and that was just one of the governing instructions that should have put Ms. Starrer on notice, that her behavior was inappropriate, and given that it was not necessary to do her job, she should not have been engaging in it. On page 328 of the record, Mr. Morgan, her supervisor, explicitly said that Ms. Starrer is not authorized to counsel sailors on their personal lives or their military careers, and as Ms. Starrer's counsel mentioned, there was a form... No, counseling itself would not be a ground for removal, but the point was that Ms. Starrer, as part of her job, did not need to, one, individually meet with these pregnant sailors, did not need to be counseling them, and the fact that she specifically sought out to meet with each pregnant sailor, counseled them and went beyond counseling and started imposing her personal viewpoints upon them, like you shouldn't count on a man. She would ask if they were married, if they're not married, whether they planned on getting married, and this is from Mr. Darnell's testimony on page 675 to 681 of the record, and I'm asking them if they had more than one child, if the child's father was the same, and then ultimately lecturing them on her disapproval of them being pregnant. There's evidence that might support a Title VII hostile work environment charge. The problem is that there wasn't any such finding here, and it's not up to us to make the findings. But, at any rate, let's talk about charges 1 and 4, because your opposing counsel agrees that those standing alone would be sufficient as support for removal. What about the statement that there was no claim that she made the misstatements intentionally? Well, the agency did state that in one interrogatory, but notwithstanding that interrogatory, Ms. Starrett was on notice that one, as she alleges, intentionally providing false and misleading information was inherent in that charge. She knew that in her response before the agency, and then also in the proceedings before the board, in her response to the agency's interrogatory on 861, she basically denied that she intentionally made those statements. But if she didn't do it intentionally, she couldn't be removed for it, right? Correct. And the board found that she did provide those statements intentionally. The board set forth the proper standard. So what you're saying is the interrogatory answer is not binding on the government? Well, the government did acknowledge in a written declaration under oath that it had provided an incorrect response in that manner. In the proceedings below, there's not an attorney that's representing the agency. It's just an agency representative. And on page 919 of the administrative record, or joint appendix, excuse me, there was a correction that was made, and we acknowledge that in the petition for review, in our response to the petition for review. What about charge 4? Charge 4, the board found that it was the agency approved it by a preponderance of the evidence. In that charge, effectively, Ms. Starrett had taken a number of steps to initiate the hiring process to hire Mr. Garcia-Cara, and then when she learned that he had written a negative statement about her, basically just critical of her professional behavior and alleging her time and attendance violations, that's found on page 283 of the appendix, she told Mr. Garcia-Cara, well, we were trying to hire you, but now, you know, you just can't be trusted. That's on page 712 of the record. And she went on to basically, over a period of time, ask Mr. Garcia-Cara to rescind his unfavorable statement about her and write a statement saying either he wrote that under duress or to write something positive in her favor. And she also told him at one point, on page 715 of the record, I need your statement so that I can get Mr. Morgan out of the picture and get you hired. And so, basically, what the agency was demonstrating under Charge 4, which was misuse of her position as a supervisor, was that Ms. Starrett was clearly using the potential of this job to get Mr. Garcia-Cara to either rescind his unfavorable statement and say he had written it under duress or write something just generally in her favor. And the record is also just replete with, there was numerous interactions between Mr. Garcia-Cara and Ms. Starrett and others discussing this job. He indicated that he thought he was told he was definitely going to have a job, that Ms. Starrett had promised him a full-time civil position. That's on page 706 and 707 of the record. And then once he came back from leave, just a few weeks later, Ms. Starrett had made those comments to him, implying that he would no longer be hired because he could not be trusted because of these statements. Mr. Tooks says that all the Douglas factors weren't properly evaluated. Well, the Douglas factors were appropriately evaluated. First of all, Mr. Tooks is only citing from the deciding official checklist that was submitted before the board, but the court should also consider the initial Douglas factors as set forth in the proposal, in the notes of proposed removal, and the decision on that proposal, which are found at page 100 of the record. That's the decision on the proposed removal. And the agency considered, one, the seriousness of Ms. Starrett's conduct in relation to the fact that she held a supervisory position, and the fact that she did hold that supervisory position is one factor that may warrant a more severe penalty for her actions. Also very significant in the Douglas factors was that the command had lost confidence and trust in her ability to perform her full range of duties, and did not feel that she was honest or had integrity, which was a very important part of her job because she was the face of the command. She was one of the first people that these sailors, when they're coming off the boat or receiving these new assignments, were meeting with, and she had to interact with a very high level of the command to put these sailors into different positions, and so her integrity and honesty was of key importance. Then they properly considered as mitigating factors Ms. Starrett's length of service, her good work performance, and her lack of prior discipline, but on balance weighing the aggravating and mitigating factors concluded that removal was necessary. What I understood Mr. Tooks to be saying was that some of the Douglas factors weren't supported by substantial evidence or were in error, and maybe the ones that you refer to might support a removal, but he's suggesting that some of the evaluations of the Douglas factors contained errors, correct? That is what he's asserting. Is there anything to that? Well, I would give more credence to the Douglas factors as they're considered actually in the decision on the removal with regards to the checklist that is being cited. What page is the checklist now? That is on 379 to 388, I believe. But say, for instance, with regards to number seven, reviewed agency guidelines. They clearly did review the agency guidelines. Are there any errors in this list? Well, with regards to this, we also have to consider that there were specifications that were... What's the answer? Are there errors in the list? Not that I can specifically point out. I don't believe so. I mean, there are specifications that weren't upheld by the board, so with regards to some of these statements, I would have to parse that. They weren't upheld by the board. They're kind of irrelevant. Correct. So this checklist was provided, though, before the board reached its decision. So obviously, he initially, the agency initially had... So the question is, are there any errors in here that relate to charges or specifications that were sustained? I do not believe so, based on the arguments that Mr. Townsville has made. For example, number four, he states offered a government position for a favorable statement. The notice of proposed removal and the decision clearly set forth the conduct that was charged, and that was upheld, and I think here, where the deciding official is giving an after-the-fact statement, it's just a matter of semantics that he put offered a government position for a favorable statement. Can't trust an employee because she lied under oath. That's number five. I see my time is up. Well, you can finish your thought. Okay. So Ms. Sterritt's contending that, well, in one interrogatory, which we did later correct and we acknowledged wasn't in error, because the agency representative did not realize that the charging official had charged her with intentionally providing false statements, that was later corrected, so I don't believe that's an error either. Thank you, Ms. Wigger. Mr. Tooks has a couple of minutes, two and a half minutes of rebuttal time. Thank you, Your Honor. Just first the statement that a statement of Douglas-factor justifications are mere semantics. That's the essence of the punishment. You are required under Douglas to set forth the reasons why you chose this punishment. It's essential, especially with respect to removal. And as I've listed, there were at least four or three, there were three considerations of matters that were not in the notice. That's a due process violation. Which of those three? Under factor number one, the allegation that Ms. Sterritt misstated the truth when she said she never considered a GS-9 salary or position for Danny Garcia Parra. That's at page 379 of the appendix. There's no specification or claim in the notice concerning that. Also under factor four at page 380, the decision maker said, alleges that Ms. Sterritt used government resources for personal gain. There's no charge or specification in the notice of proposal removal for that. Also at page 380, the deciding official said that Ms. Sterritt offered a government position in exchange for a written statement favorable to her. There is no charge or specification in the notice concerning that. And the deciding official has admitted in this statement that he considered these things, among others, as considerations for removing Ms. Sterritt. And under O'Keefe, if you consider something not in the notice as a basis for removal, that is a due process violation. Ms., there was a question concerning charge number four. What has been left out of charge number four is the fact that the reason things stopped was because the supervisor, Mr. Morgan, came to the conclusion that he could not offer the military member, Mr. Garcia Parra, a permanent position. He could only offer a temporary position. That's not mentioned anywhere in the MSPB. The presumption is that Ms. Sterritt stopped the process because she got an adverse statement. It was the supervisor who stopped the process. Thank you, Bruce. Where's the notice in the record to which you're referring? What notice? I'm sorry. Where is the notice to which you're referring, which lacks the charges and specifications? The notice of proposed removal is found in the record at page 72 through 76. Thank you. 72 through 76. Thank you, Mr. Tocqueville. Thank you. We'll take the case under review.